IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CV-438-RJ

BILLY HONEYCUTT,

        Plaintiff/Claimant,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

ORDER

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-23, -28] pursuant to Fed. R. Civ. P. 12(c). Claimant Billy Honeycutt ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on February 3, 2017, alleging disability beginning January 27, 2017. (R. 18, 225–37). Both claims were denied initially and upon reconsideration. (R. 18, 77–125). A hearing before the Administrative Law Judge ("ALJ") was held on May 20, 2019, at which Claimant, represented by counsel, and a

vocational expert ("VE") appeared and testified. (R. 34–76). On July 9, 2019, the ALJ issued a decision denying Claimant's request for benefits. (R. 15–33). On June 15, 2020, the Appeals Council denied Claimant's request for review. (R. 1–7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the following errors: (1) the ALJ failed to give substantial weight to Claimant's disability rating from the Department of Veterans Affairs ("VA") in contravention of *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 343 (4th Cir. 2012), and (2) the ALJ failed to perform a proper function-by-function evaluation of Claimant's ability to reach,

3

handle, and finger with his dominant upper extremity when formulating the Residual Functional Capacity ("RFC"). Pl.'s Mem. [DE-24] at 7–13.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since January 27, 2017, the alleged onset date. (R. 20). Next, the ALJ determined Claimant had the following severe impairments: osteoarthritis, to include bilateral shoulders and right knee; Morton's neuroma; right shoulder fracture; right shoulder disfunction; Dupuytren's contracture, to include the right fourth and fifth digits; degenerative disc disease of the cervical and lumbar spine; lumbar spine stenosis; radiculopathy; alcoholic cirrhosis; thrombocytopenia; portal vein thrombosis; diabetes mellitus; right ulnar nerve mononeuropathy; and obesity. (R. 20–21). The ALJ also found Claimant had the following additional medical conditions or impairments that were "nonsevere"[1]: dermatitis; varicose veins; hypertension; hyperlipidemia; gallbladder adenomyomatosis; hypertensive portal gastropathy; gastritis; ulcers; adrenal nodule; leukopenia; hypersplenism; splenomegaly; sinusitis; history of sinus surgery; history of right lower extremity fracture; claw foot; erectile dysfunction; hepatic lesions; portal hypertension; esophageal varices; portal vein thrombus; osteopenia; hemorrhoids; colon polyps; retinopathy; keratitis; diarrhea; alcohol abuse; cannabis use; depressive disorder; adjustment disorder; and anxiety disorder. (R. 21). However, at step three, the ALJ concluded these impairments were not severe enough, either

---

[1] The ALJ found these impairments "either were not medically determinable; did not meet the twelve-month duration requirement for a severe impairment; or did not have more than a minimal effect on the claimant's ability to do basic work activities," and concluded they were "not severe." (R. 21) (internal citations omitted). Impairments that are "not severe," unlike impairments that are "not medically determinable," must still be considered in evaluating a claimant's RFC. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). On remand, the ALJ should distinguish between impairments that are "not severe" and "not medically determinable" so that the court is not left to guess at the ALJ's step two findings and so the court can conduct a meaningful review of the step two and RFC determinations.

4

individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22–23). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in "no more than mild" limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 21–22).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[2] with the following exceptions:

> [F]requently push/pull and operate foot controls with the right lower extremity; frequently push/pull and operate hand controls with the left upper extremity; occasionally push/pull and operate hand controls with the right upper extremity; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently reach bilaterally; occasionally reach overhead bilaterally; frequently handle objects and finger with the right upper extremity; occasional exposure to vibration; and occasional exposure to unprotected heights, hazardous machinery or hazardous moving mechanical parts.

(R. 23–27). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely consistent with the medical and other evidence. (R. 27).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as an electrician. *Id.* Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 28–29).

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

## V. DISCUSSION

### A. ALJ's evaluation of Claimant's ability to reach, handle, and finger with the dominant upper extremity when formulating Claimant's RFC

Claimant contends that the ALJ erred in failing to perform a function-by-function evaluation of Claimant's ability to reach, handle, and finger with the dominant upper extremity when formulating the RFC. Pl.'s Mem. [DE-24] at 10–13. Claimant argues that despite testimony and medical evidence concerning Claimant's use of his dominant upper extremity, the ALJ did not "form a logical bridge between the medical facts cited in his opinion and his ultimate conclusions regarding Mr. Honeycutt's functional capacity," and did not explain how Claimant can use his dominant upper extremity to reach, handle, and finger "frequently" for the majority of the workday. *Id.* at 11.

Defendant counters that the ALJ's decision demonstrates that the ALJ sufficiently accounted for Claimant's limitations. Further, Defendant argues even if the ALJ did not adequately explain how Claimant can "frequently" reach, handle, and finger with his right upper extremity, any error is not reversible. Def.'s Mem. [DE-29] at 13.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion

6

describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted). Therefore, despite an ALJ's failure to conduct the function-by-function analysis, the court must look to the ALJ's RFC discussion to determine whether it otherwise provides a sufficient basis for meaningful review.

Here, the ALJ found that Claimant has the RFC to perform light work with limitations. (R. 23–27). Claimant, as noted above, takes issue with the ALJ's limiting Claimant to "frequent reaching, handling and fingering with the right upper extremity in the RFC determination," and the ALJ's explanation of that limitation. Pl.'s Mem. [DE-24] at 11. Claimant points to evidence of significant difficulties with his arms and in particular with his dominant upper extremity. *Id.* at 10–13. Claimant states that the record shows that he has "significant weakness and severe atrophy in the right hand, with contracture of the fourth and fifth digits and confirmed ulnar mononeuropathy and crevicular radiculopathy." *Id.* at 13. Further, Claimant argues, the ALJ did not adequately "explain how the evidence establishing such significant defects leads to the

7

conclusion that [Claimant] can use his dominant hand to perform gross and fine motor movements for the majority of the workday." *Id.*

Claimant contends that despite "testimony and medical evidence, the ALJ included only a limitation to "frequent" reaching, handling and fingering with the right upper extremity in the RFC determination." *Id.* at 11. Claimant continues, stating that "frequently" is defined at up to two-thirds of the workday (six hours of an eight-hour workday). Claimant argues that the ALJ did not sufficiently explain how the evidence demonstrates Claimant can frequently use his dominant upper extremity to reach, handle, finger during the workday. *Id.* Claimant also questions why the ALJ limits Claimant to "occasional" overhead reaching, while maintaining that Claimant can "frequently" reach in other directions. From the lack of analysis, Claimant states it is unclear why the ALJ believed Claimant's statements about reaching overhead but not in other directions. *Id.* at 11. Despite the ALJ's summarizing some medical evidence in the record, Claimant argues the ALJ did not adequately explain the frequency of Claimant's ability to reach, handle, and finger with the dominant upper extremity, and thus performed no "function-by-function" analysis. *Id.* at 12.

Defendant points to the ALJ's considering various pieces of medical and non-medical evidence, and further argues that the ALJ's RFC accounts for Claimant's upper extremity limitations. Def.'s Mem. [DE-29] at 11–12. Defendant also argues that even if the ALJ did not adequately explain the frequency limitation for Claimant's reaching, handling, and fingering with his right upper extremity, any error is harmless and not reversible. *Id.* at 13. Defendant states that the jobs the VE testified that a person like Claimant could carry out do not require "frequent" reaching, fingering, or handling, and thus the outcome of the ALJ's decision would not have changed, even if the limitation was "occasionally" instead. *Id.* at 13–14.

A summary of ALJ's discussion of Claimant's upper extremities follows. The ALJ noted

8

that the Claimant had reported a history of acute injuries to his right leg and shoulder in 1999 and to his left shoulder in 2007, in addition to other medical conditions. (R. 25, 422, 700, 1182). The ALJ stated that in 2016, Claimant was described as being capable of carrying out a full range of normal daily activities, and Claimant admitted to being in generally normal and stable overall condition. (R. 25, 335, 562–63). The ALJ noted a January 2017 x-ray of Claimant's left shoulder, which "confirmed the presence of moderate osteoarthritis about the acromioclavicular joint." (R. 25, 373, 424). After noting other medical conditions, the ALJ then stated that the Claimant demonstrated mostly normal physical functioning, despite his subjective complaints, citing treatment records and an x-ray from September 2017, though referring to more of Claimant's lumbar spine issues. (R. 25, 913–14, 1275). The ALJ continued, noting that Claimant sustained a closed fracture of the right shoulder in late February 2018 after a fall. (R. 25, 752). The ALJ also stated that while Claimant had a normal range of motion, (R. 25, 758), a CT scan showed the presence of a severely comminuted fracture of the right proximal humeral diaphysis, with displacement of the lateral fracture fragment, without dislocation, (R. 25, 803–08). After mentioning medical notes regarding Claimant's lumbar spine and abdomen, the ALJ noted imaging of Claimant's right shoulder in March, April, June, and August of 2018 showed progressive healing without evidence of any acute abnormalities. (R. 26, 791–94). The ALJ noted other medical evidence, then continued regarding Claimant's right shoulder, that October 2018 examinations revealed continued healing processes unaccompanied by apparent worsening or other musculoskeletal deficits. (R. 26, 786–88). The ALJ noted medical evidence regarding Claimant's abdomen, BMI, degenerative disc disease, and then noted January and February 2019 CT scans of the right upper extremity "which revealed some incomplete union of [Claimant's] prior fracture." (R. 26, 782–84). The ALJ then noted evidence regarding Claimant's other medical impairments

9

and conditions, and stated that other medical treatment notes were "generally unremarkable." (R. 26).

The ALJ concluded as follows:

> In sum, the record documents that claimant suffers from physical and mental impairments, which singly or in combination do cause certain limitations. However, the record does not establish that the claimant's limitations are disabling. The above residual functional capacity is supported by the objective medical evidence, to include imaging and laboratory test results and physical and mental status examinations, treatment notes, and other evidence of record, to include the claimant's activities of daily living. Given the claimant's impairments including his shoulder, knee and back problems, cirrhosis, obesity, pain, and fatigue, the claimant is limited to light work, with push/pull, postural, manipulative, and environmental restrictions, and an allowance for time off task.

(R. 26).

Here, regarding the ALJ's discussion of Claimant's upper extremities, the ALJ simply recites evidence rather than provide analysis. The ALJ did not explain how Claimant can use his dominant upper extremity frequently during the workday, and thus did not perform a function-by-function analysis regarding that limitation. *See Mascio*, 780 F.3d at 636 ("the residual functional capacity 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'") (citing S.R.R. 96-8-p). "[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion . . . . [M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Moseley v. Kijakazi*, No. 4:20-CV-162-D, 2022 WL 484099, at *3 (E.D.N.C. Feb. 1, 2022), *report and recommendation adopted*, 2022 WL 482540 (E.D.N.C. Feb. 16, 2022) (*quoting Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019); *Woods*, 888 F.3d at 694). Simply put, this means an ALJ must "[s]how [his] work." *Patterson v. Comm'r of SSA*, 846 F.3d 656, 663 (4th Cir. 2017)

10

(applying same principle to an ALJ's listing analysis).

Further, nowhere does the ALJ explicitly explain which of Claimant's statements he chose to believe and which to discredit regarding that limitation. *See id.* at 640 (finding the ALJ's lack of explanation required remand where the decision lacked explanation of how he decided which statements to believe and which to discredit); *Ostendorf v. Saul*, No. 5:19-CV-301-FL, 2020 WL 5748813, at *5 (E.D.N.C. Sept. 25, 2020) ("Thus, without further explanation, it is not clear if the ALJ viewed plaintiff's testimony as not credible or not pertinent to plaintiff's functional limitations."). The ALJ did not explicitly address Claimant's testimony that he struggles to reach out in front and that he cannot reach overhead, (R. 55–56), and did not explain how he arrived at the conclusion that Claimant could reach, handle, and finger with the dominant upper extremity "frequently," for the majority of the workday. Defendant does state that Claimant "testified to not having any limitation in doing laundry, cleaning, and basic household maintenance work (Tr. 59); moving two and a half acres of lawn using a riding mower (Tr. 46); going to his uncle's doctor's appointments; and to riding around with his uncle and visiting thrift stores with him (Tr. 60)"; however, Defendant states that the ALJ did not expressly state such in his decision. Def.'s Mem. [DE-29] at 12. The ALJ did generally note, however, before discussing the medical evidence, that "the claimant testified that he remained capable of sustaining a daily routine, carrying out various activities of daily living, caring for himself and animals, attending appointments, and driving. (Hearing Testimony)." (R. 24). But the ALJ did not offer this reasoning explicitly explaining the "frequent" upper extremity limitation and discounting Claimant's statements and evidence about his right upper extremity, and the court cannot substitute Defendant's explanation for one not given by the ALJ. *See Cumbee v. Kijakazi*, No. 7:20-CV-59-FL, 2021 WL 4447625, at *4 (E.D.N.C. Sept. 28, 2021) ("[H]owever meritorious [the Commissioner's suggested] rationale might be,

11

acceptance of such an unclearly stated but ostensibly implicit rationale would constitute 'post-hoc justification.'") (citing *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 109 (4th Cir. 2020); *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013)).

There is also evidence in the record not explicitly discussed by the ALJ that could show that Claimant is more limited than the ALJ says—showing Claimant's significant weakness and atrophy in his right hand, with contracture of the fourth and fifth digits and confirmed mononeuopathy and cervical radiculopathy. Pl.'s Mem. [DE-24] at 13; *see* (R. 55–56—Claimant's testimony that he can lift and carry about three pounds, that he has difficulty reaching out in front and cannot reach overhead; R. 881–82—September 2018 treatment notes noting severe muscular atrophy of the FDI and ADQ muscles within Claimant's right hand, Claimant's stating he had diffuse pain in his entire upper right extremity and had been dropping objects, a mildly weak right handgrip, significantly weak right finger abductors, EMG testing showed evidence of right ulnar nerve mononeuropathy "not well localized during today's testing, probably due to its severity," and evidence of an active right C5-C6 radiculopathy; R. 841—treatment note from February 25, 2019 indicating that Claimant had decreased right shoulder mobility, decreased right shoulder range of motion, right shoulder pain with resisted activities, decreased sensation in ulnar nerve distribution; R. 953—treatment note from the following day stating that Claimant had a reduced range of motion in the cervical spine).

While there is evidence in the record that could arguably support the ALJ's decision, the "depth and ambivalence" of the medical record in this case precludes the court from undertaking a "meaningful review," where the ALJ failed to explain both how he evaluated Claimant's subjective statements and his reasoning regarding the upper extremity limitations in the RFC. *See Radford*, 734 F.3d at 296; *see also Monroe*, 826 F.3d at 188 ("[R]emand may be appropriate where

12

an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review," quoting *Mascio*, 780 F. 3d at 636, and "[o]n remand, the ALJ should assess [the claimant's] credibility in the context of the function-by-function analysis of the limitations caused by [the claimant's] impairments, which the ALJ will then use to determine [the claimant's] RFC.").

The function of Claimant's using his right upper extremity is contested. Thus, as noted by the Fourth Circuit in *Dowling v. Comm'r of Soc. Security*, an ALJ must conduct a function-by-function analysis when expressing a claimant's RFC "in terms of [] exertional levels of work." 986 F.3d 377, 388 (4th Cir. 2021) (quoting *Monroe*, 826 F.3d at 179). Defendant argues that any error of the ALJ in explaining the upper extremity limitations is harmless because the light occupations that the VE testified that a person like Claimant could carry out do not require frequent reaching, fingering, or handling, thus the outcome of the decision would not have changed. Def.'s Mem. [DE-29] at 13–14. However, the court cannot predict what the ALJ will find on remand with respect to Claimant's ability, which could be more limited than "occasionally." As Claimant argues, the SSA recognizes that light work jobs normally "require use of arms and hands to grasp and hold and turn objects." Pl.'s Mem. [DE-24] at 13 (citing SSR 83-10).

The ALJ's RFC determination regarding Claimant's upper extremity limitations lacks sufficient explanation for the court to conduct a meaningful review, and accordingly, this case is remanded to the Commissioner for further proceedings consistent with this order. The court expresses no opinion on the outcome of the claim on remand.

**B.      Claimant's Disability Rating from the VA**

Claimant contends that the ALJ erred by failing to accord substantial weight to Claimant's disability rating from the VA, in contravention of *Bird*, without demonstrating deviation was

13

appropriate. Pl.'s Mem. [DE-24] at 7–9. Defendant, on the other hand, argues that the ALJ properly considered and weighed Claimant's VA disability rating, but rejected it because the "VA has different rules and regulations governing their determinations of disability (see VA rating schedule at 38 CFR Part 4, Subparts A and B), and the ultimate determination of disability is an issue reserved to the SSA Commissioner (see 20 CFR 404.1527(d))," and because the ALJ gave greater weight to medical and other evidence in the record. (R. 26–27); see Def.'s Mem. [DE-29] at 5–10.

In *Bird*, the Fourth Circuit noted that "both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." 699 F.3d at 343 (citation omitted). "Thus, . . . in making a disability determination, the SSA must give substantial weight to a VA disability rating" unless the record clearly demonstrates that a lesser weight is appropriate. *Id.* ("[B]ecause the SSA employs its own standards for evaluating a claimant's alleged disability . . . an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.").

The VA assigned Claimant a 50% disability rating. (R. 841). That included a 20% disability rating for intervertebral disc syndrome, a 10% disability rating for tinnitus,[3] a 10% disability rating for paralysis of sciatic nerve, a 10% disability rating for limited flexion of knee, a 10% disability rating for paralysis of the sciatic nerve (noted two times), and a 0% disability rating for ear infection. *Id.* As acknowledged by both parties, the full VA decision was not in the record.

The ALJ noted Claimant's VA disability rating but gave it little weight. (R. 26–27). The

---

[3] Defendant notes that Claimant "did not at the administrative level allege tinnitus as an impairment affecting his ability to work, and did not take issue with the ALJ not having considered it. Tinnitus therefore is outside of this litigation." Def.'s Mem. [DE-29] at 6 n.2.

14

ALJ first noted differences in the VA rules and regulations and the SSA regulations and standards. *Id.* The ALJ then acknowledged *Bird* and found that "deviation is appropriate for the reasons enumerated above and given the medical and other evidence before the undersigned, as described above." *Id.* at 27.

Claimant argues that the ALJ did not justify deviation from the VA's determination under *Bird*. Pl.'s Mem. [DE-24] at 7–9. Claimant alleges that "it appears that the only reason enumerated in the decision is that the VA 'has different rules and regulations' and then the ALJ describes the differences in the two programs." Pl.'s Mem. [DE-24] at 7. Deviation just on the "different standards" rationale, Claimant argues, is not proper, citing multiple cases from this district and other courts. Additionally, Claimant notes that "though the full VA decision does not appear in Mr. Honeycutt's file, the ALJ was aware of the decision, including the percentage breakdowns for the individual impairments." Pl.'s Mem. [DE-24] at 8 (citing (R. 26–27)); *see* (R. 841). Further, Claimant argues, the ALJ therefore had a duty to fully develop the record by obtaining the full VA decision. Pl.'s Mem. [DE-24] at 8–9. On this point, Claimant cites *Dixon v. Colvin*, 7:15-cv-221-BO, 2016 WL 3080795, at *2 (E.D.N.C. May 31, 2016), where the court stated, "without reviewing the determination, the ALJ has an insufficient basis for assigning it little weight, nor could the ALJ determine that deviation therefrom was appropriate. Accordingly, the Court finds that it was in error for the ALJ not to review the VA disability determination." Pl.'s Mem. [DE-24] at 9.

Defendant counters that the ALJ properly considered the VA rating, gave it "limited weight," and explained why deviation under *Bird* was appropriate. Def.'s Mem. [DE-29] at 6. Defendant contends that the ALJ did not discount the VA rating solely because the SSA and VA have "different rules and regulations," but instead also articulated that deviation was appropriate "given the medical and other evidence before [him], as described above." *Id.* Defendant argues that this

15

demonstrates that the ALJ "examined several pieces of evidence relevant to the back and lower extremity impairments in the record" before assigning limited weight to the VA disability rating. *Id.* at 7. Defendant points to the ALJ's noting the following evidence earlier in the RFC section, before the discussion on the VA rating: April 2016 and September 2017 x-rays of the lumbar spine and right knee, which showed osteoarthritis of the right knee and mild degenerative disc disease, most prominent at the T12 to L1 level, (R. 25); an MRI of the lumbar spine showing mild spinal canal stenosis at the L4 to L5 level and moderate to severe bilateral neuroformaminal stenosis at the L4 through S1 levels, *id.*; a January 2019 imaging of Claimant's spine showing degenerative disc disease at the C4 to C5 level, (R. 26); Claimant's history of injuries to his right leg in 1999, (R. 25); Claimant's demonstrating mostly normal physical functioning despite subjective complaints, *id.*; generally unremarkable medical treatment notes, (R. 26); and Claimant's being able to care for himself, drive, reliably attend regularly scheduled medical appointments, and adhere to daily routine, (R. 21, 24). Def.'s Mem. [DE-29] at 7. Thus, Defendant argues, as the ALJ considered this evidence in the paragraphs above the discussion of the VA rating, the record properly demonstrated that deviation under *Bird* was warranted and that the ALJ properly assigned "limited weight" to the VA rating. *Id.* at 8.

Additionally, Defendant contends that the ALJ did not have a duty to obtain the actual VA disability determination, contrary to Claimant's assertion. *Id.* at 8–10. The ALJ did not, Defendant states, because unlike in *Dixon*, the evidence in this case was adequate. *Id.* (citing 2016 WL 3080795, at *2 ("the ALJ has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record, and cannot rely on the evidence submitted by the claimant with that evidence is inadequate.")). Defendant continues, stating that Claimant submitted "over a thousand pages of treatment records . . . primarily from the Department of Veteran's Affairs or

16

Veteran's Affairs Medical Center []" and thus the record was comprehensive and the ALJ "had sufficiently detailed medical evidence" before him, "against which he could assess whether the disability rating from the VA merited "substantial weight" or a lesser weight. *Id.* at 9.

Here, the ALJ's justification for deviating from the VA's decision was sufficient under *Bird*, as the court can trace the ALJ's reasoning. *See Monroe*, 826 F.3d at 189 (explaining the ALJ must "build an accurate and logical bridge from the evidence to his conclusion"). Claimant testified that he could sustain a daily routine, and the ALJ noted generally unremarkable medical records demonstrating mostly normal functioning.

First, "simply noting the fact that the VA and SSA employ different standards and that the ultimate disability decision is reserved to the Commissioner is insufficient to justify deviation under *Bird*." *Hack v. Saul*, No. 5:19-CV-508-FL, 2020 WL 7391295, at *4 (E.D.N.C. Sept. 9, 2020), *report and recommendation adopted*, 2020 WL 7388428 (E.D.N.C. Dec. 16, 2020); *see Nguyen v. Colvin*, No. 5:14-CV-227-D, 2015 WL 5062241, at *7 (E.D.N.C. Aug. 10, 2015) ("[T]he reasons cited by the Commissioner—different rules and different standards—would apply to every case and thus cannot be relied upon to avoid scrutiny of the [agency's] decision under *Bird's* new presumptive standard."), *adopted by* 2015 WL 5089060 (E.D.N.C. Aug. 27, 2015).

Secondly, the ALJ articulated that deviation was also appropriate "given the medical and other evidence before the undersigned, as described above," (R. 27), referencing the evidence discussed in the RFC section before the ALJ addressed the VA rating. "Only where the ALJ points to clear reasons for deviation can the ALJ give less weight to a VA rating." *Mullen v. Berryhill*, No. 4:16-CV-27-BO, 2017 WL 3412142, at *2 (E.D.N.C. Aug. 8, 2017); *Hildreth v. Colvin*, No. 1:14CV660, 2015 WL 5577430 (M.D.N.C. Sept. 22, 2015).

Earlier in the RFC discussion, the ALJ cites various objective medical evidence, positive

17

imaging, physical examinations, treatment notes regarding Claimant's back and lower extremities, and Claimant's testimony regarding carrying out daily activities—April 2016 and September 2017 x-rays of the lumbar spine and right knee, which showed osteoarthritis of the right knee and mild degenerative disc disease, most prominent at the T12 to L1 level, (R. 25); an MRI of the lumbar spine showing mild spinal canal stenosis at the L4 to L5 level and moderate to severe bilateral neuroformaminal stenosis at the L4 through S1 levels, *id.*; a January 2019 imaging of Claimant's spine showing degenerative disc disease at the C4 to C5 level, (R. 26); Claimant's history of injuries to his right leg in 1999, (R. 25); Claimant's demonstrating mostly normal physical functioning despite subjective complaints, *id.*; generally unremarkable medical treatment notes, (R. 26); and Claimant's being able to care for himself, drive, reliably attend regularly scheduled medical appointments, and adhere to daily routine, (R. 21, 24). Def.'s Mem. [DE-29] at 7.

Claimant's VA rating included disability assignments largely regarding the back and lower extremities—20% for intervertebral disc syndrome, 10% for paralysis of sciatic nerve, and 10% for limited flexion of knee. (R. 841). Thus, the court can trace the ALJ's reasoning, that generally mild imaging, generally unremarkable physical examinations and treatment notes, and Claimant's testimony regarding his ability to carry out daily activities all could support a lesser weight afforded to the VA ratings concerning Claimant's back and lower extremities. Accordingly, the ALJ sufficiently explained how the record clearly demonstrates that giving less-than-substantial weight to the VA disability rating.

Additionally, the ALJ did not have a duty to obtain the full VA record under the circumstances presented. The ALJ has a responsibility to "explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d

1168, 1173 (4th Cir. 1986) (citing *Walker v. Harris*, 642 F.2d 712, 714 (4th Cir. 1981); *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980)). However, this "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Baysden v. Colvin*, No. 4:12-CV-303-FL, 2014 WL 1056996, at *9 (E.D.N.C. Mar. 18, 2014) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459– 60 (9th Cir. 2001)). While " the ALJ must fully and fairly develop the record so that a just determination of disability may be made, . . . the ALJ is not required to function as the claimant's substitute counsel." *Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994). Moreover, the ALJ's duty to develop the record "does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008); *see also* 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1512(d); *Gatling v. Astrue*, No. 2:11-CV-21-FL, 2012 WL 4359435, at *7 (E.D.N.C. June 28, 2012) (rejecting the argument that the ALJ erred in failing to develop the record where, at the hearing before the ALJ, claimant's counsel did not indicate or suggest to the ALJ that any medical records from one of the physicians were missing from the administrative record, nor did counsel ask for the ALJ's assistance in obtaining any additional medical records), *adopted by* 2012 WL 4357013 (E.D.N.C. Sep. 21, 2012); *White v. Colvin*, No. 5:13-CV-757-RN, 2015 WL 1438747, at *9 (E.D.N.C. Mar. 27, 2015).

Here, the ALJ fulfilled his duty to develop the record. As Defendant notes, Claimant submitted over a thousand pages of treatment records, largely from the VA, and the ALJ knew of and discussed Claimant's VA rating. Additionally, Claimant's hearing counsel stated that the record was "complete." (R. 38). Given the evidence already in the record and hearing counsel's assertion that the record was sufficient, the ALJ did not commit error by failing to obtain the full

19

VA decision. *See Chamberlain v. Berryhill*, No. 7:16-CV-337-RJ, 2018 WL 845544, at *7 (E.D.N.C. Feb. 13, 2018); *White* 2015 WL 1438747, at *9.

Thus, the ALJ did not err in by failing to accord substantial weight to Claimant's disability rating from the VA, and likewise did not err in failing to obtain the full VA determination.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings, [DE-23], is ALLOWED, Defendant's Motion for Judgment on the Pleadings, [DE-28], is DENIED, and this matter is REMANDED to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings consistent with this Order.

Submitted, this the 9 day of March, 2022.

Robert B. Jones, Jr.
United States Magistrate Judge